IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MILLARD BELL, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-CV-1009-O |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Milliard Bell, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID), against Bobby Lumpkin, the director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

In 2017 Petitioner was indicted in Tarrant County, Texas, Case No. 1474504D, with aggravated sexual assault of a child by oral contact with the complaint's sexual organ (Count One) and by digital penetration of the complaint's sexual organ (Count Two) and indecency with a child by causing the complainant to touch his genitals (Count Three) and by exposing his genitals to the complainant (Count Four). SHR[1] 5, ECF No. 18-10. The state waived Count Four prior to trial and Count Three during trial. *Id.*; Reporter's R., vol. 5, 18, ECF No. 18-5; Reporter's R., vol. 6, 79, ECF No. 18-6. On May 18, 2018, a jury found Petitioner not guilty under Count One but guilty under

---

[1] "SHR" refers to the record of Petitioner's state habeas proceeding in WR-91,517-01.

Count Two and assessed his punishment at 30 years' imprisonment and a $10,000 fine. SHR 43–44, 48, ECF No. 18-10. Petitioner's conviction was affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review with written order. *Id.* at 76; *Bell v. State,* PD-0587-19 (Tex. Crim. App. July 24, 2019). This federal habeas petition challenging his conviction followed.

> The state appellate court summarized the facts of the case as follows:
>
> When Donna, the complainant, was in second grade, she spent the night with her cousin [K.W.] at a relative's house where [Petitioner] lived. According to Donna, after bedtime that evening, [Petitioner] woke her up, handed her [K.W.]'s pink Nintendo DS game system, and told her to go into the living room. Once in the living room, he told her to play with the game.
>
> After Donna sat down on the couch to play, [Petitioner] sat on the floor, and while she played with the game, he touched her "private area" with his fingers. While he was touching her, [Petitioner] told her that he would give her a Nintendo DS of her own if she did not tell anyone. But he also warned her that if she told anyone, he would hurt her family. It was undisputed at trial that [Petitioner] did buy a Nintendo DS for Donna.
>
> Some years later, when Donna was 13 years old, she related these events to her mother. [Before Donna told her mother or any other adults who were eighteen or older, . . ., she told [K.W.], her friend Amy, and her cousin Tonya—individually, and at different times—about Petitioner's having touched her.] After this outcry, Donna underwent a forensic interview, followed by a medical exam with a sexual assault nurse examiner (SANE nurse).
>
> At trial, Donna, her mother, the forensic interviewer, the SANE nurse, one of Donna's friends, two of Donna's cousins, and Donna's stepfather testified. . . .

SHR 52–53, ECF No. 18-10 (footnotes omitted) (citation omitted).

## II. ISSUES

Petitioner raises the following grounds for relief:

(1) The prosecution, trial court, and court of appeals violated his substantial rights by introducing and allowing inadmissible hearsay testimony (ground

one); and

(2) The prosecution, trial court, and court of appeals violated his substantial rights by objecting to, sustaining, and allowing him to be silenced in closing arguments (grounds two and three).

Pet. 6–7, ECF No. 3. Petitioner's claims are addressed only to the extent raised and exhausted in the state courts.

## III. RULE 5 STATEMENT

Respondent believes that Petitioner has exhausted his state-court remedies as he interprets the claims and that the petition is neither barred by the statute of limitations nor subject to the successive-petition bar. Resp't's Suppl. Answer 4–5, ECF No. 22.

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter,* 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence.

3

28 U.S.C. § 2254(e)(1).

Furthermore, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191–92 (2018).

## V. DISCUSSION

### A. Ground One

Under ground one, Petitioner claims that the prosecution, trial court, and court of appeals violated his substantial rights by introducing and allowing inadmissible hearsay testimony from K.W. Pet. 6, ECF No. 3. On direct appeal, Petitioner asserted only that the trial court erred by allowing hearsay testimony from K.W. Thus, the claim is addressed only to that extent.

The appellate court set out the complained-of testimony and, relying solely on state law, addressed the issue as follows:

> [Petitioner] argues that the trial court abused its discretion by allowing [K.W.], a minor, to testify about what Donna said to her via "artful questioning designed to elicit hearsay indirectly." To support his argument, [Petitioner] refers us to the following portions of [K.W.]'s testimony:
>
> Q. Okay. I want to take you back to a time a few years ago. Was there a time when [Donna] confided in you about something?
>
> [Defense]: Object --
>
> A. Yes.
>
> [Defense]: Object to that. She's not old enough to testify as an outcry witness, Judge.

4

[Prosecutor]: Judge, I'm not offering her as an outcry witness. I'm not even offering the specific statements.

THE COURT: Overruled.

Q. Was there a time that [Donna] confided in you about something?

A. Yes.

Q. We can't get into exactly what she said, but what was her demeanor when she confided in you?

A. She was sad.

[Defense]: Your Honor, we would further object to relevance.

THE COURT: Overruled.

[Petitioner] voiced no further objections during [K.W.]'s testimony.

[K.W.] proceeded to testify that Donna had been very sad and crying when she confided in her and that [K.W.]'s reaction to Donna's unnamed revelation was that she was shocked. [K.W.] advised Donna to tell someone else, but Donna told [K.W.] that she was scared to do so. When asked whether what Donna told her eventually came out later, [K.W.] said, "Yes," and upon further questioning, she said that what Donna told her came out later to Donna's mother. When asked whether what Donna told her and what Donna told her mother was why they were at trial, [K.W.] said, "Yes."

After [K.W.]'s testimony concluded, the trial court sent the jury to lunch, and [Petitioner] moved for a mistrial, arguing,

> The State has already prejudiced the jury with inadmissible hearsay over Defense objection. State elicited from [K.W.] just a moment ago on the record that what [Donna] supposedly told her, without going into it, is the same thing that she told her mom . . . who has been noticed by the State as the outcry witness.
>
> [K.W.] is under 13. She's not an outcry statement -- witness, but she's effectively become one just to support or bolster what comes in later. We think that's improper, and I don't think that's going to be able to -- to get the error out of the jury's mind. We would

5

> ask for a mistrial.
>
> If the State -- I mean, if the Court denies a mistrial, then we would ask for an instruction for the jury to disregard that testimony.
>
> The prosecutor responded that the State had not elicited any hearsay because it was merely offering [K.W.]'s observations of Donna's demeanor and her reaction as the effect on the listener. The trial court denied the motion for mistrial and the requested instruction.
>
> To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. A party must object as soon as the basis for the objection becomes apparent. And, generally, a party must object each time the objectionable evidence is offered.
>
> Here, [Petitioner] objected that [K.W.] was not old enough to testify as an outcry witness, i.e., an objection based on the hearsay exception set out in section 2(a)(3) of code of criminal procedure article 38.072. But—as set out above—the State did not offer [K.W.] as an outcry witness, and the extent of [K.W.]'s testimony about Donna's statements to her were (1) that Donna told [K.W.] that she was scared, and (2) that what Donna told her is what Donna later told her mother; [Petitioner] did not timely object to either of these statements on the basis of hearsay. Instead, [Petitioner]'s other objection in this portion of the record was to relevance, which he does not raise as a complaint in this appeal. Because [Petitioner] did not raise any other objections during [K.W.]'s testimony, violating both the timeliness and specificity requirements of our preservation-of-error rules, he has not preserved this complaint for our review,

SHR 55–57, ECF No. 18-10 (footnotes omitted) (citations omitted).

Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997).

The Texas contemporaneous-objection rule for preservation of error constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claim(s). *Styron v. Johnson,* 262 F.3d 438, 453 (5th Cir. 2001); *Dowthitt v. Johnson,* 230 F.3d 733, 752 (5th Cir. 2000); *Jackson v. Johnson,* 194 F.3d 641, 652 (5th Cir. 1999); *Amos v. Scott,* 61 F.3d 333, 339–41 (5th Cir. 1995). Because the state court clearly relied upon a firmly established and regularly followed state procedural rule to deny the claim, federal habeas review of the claim is barred unless Petitioner can demonstrate cause for the default and actual prejudice or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice–i.e., that he is actually innocent of the offense for which he was convicted. *Coleman,* 501 U.S. at 750. Such showing not having been demonstrated by Petitioner, ground one is procedurally barred from the Court's review.

**B. Grounds Two and Three**

Under grounds two and three, Petitioner claims that the prosecution, trial court, and court of appeals violated his substantial rights by objecting to, sustaining, and allowing him to be silenced in closing arguments. Pet. 6–7, ECF No. 3. On direct appeal, Petitioner asserted only that the trial court erred by denying him the opportunity to make a defense during closing argument by sustaining the state's objections in two instances. Thus, the claims are addressed only to that extent.

In the last reasoned opinion on the issue, the appellate court, relying solely on state law, addressed the claims as follows:

> [Petitioner] contends that the trial court erred by sustaining the State's objections to his jury argument, thereby preventing him from fully arguing his defense at closing. He further argues that by sustaining the State's objections and instructing the jury to disregard his arguments, the trial court foreclosed his ability to use the State's witnesses' testimonies to argue about Donna's credibility.
>
> The trial court has broad discretion in controlling the scope of closing

7

argument. Generally, to be permissible, a jury argument must fall within one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to opposing counsel's argument; or (4) a plea for law enforcement. The trial court does not abuse its discretion by sustaining an objection to an argument that is not supported by the evidence.

[Petitioner] directs us to two instances during which the trial court sustained the prosecutor's objections to his arguments, complaining that both instances were either summation of the evidence or a reasonable deduction from the evidence.

In the first instance, [Petitioner] contended that Chase, the forensic interviewer, was only there as a witness to retell Donna's story and argued, "She didn't have any evidence to present. Oh, yeah, kids oftentimes confuse things, *make things up.* Tell some things to one person. Some things to another person." The prosecutor objected to this argument as mischaracterizing Chase's testimony, complaining, "She never said they make things up." The trial court sustained the objection and granted the prosecutor's request for an instruction to disregard.

[Petitioner] directs us to the following portion of Chase's testimony during her direct examination to support his argument:

> Q. Would the way an adult reacts to a statement be different than the way a child would react to the same statement?
>
> A. In my experience, yes.
>
> Q. Do children always -- do they always feel comfortable giving details to anyone that asks?
>
> A. No.
>
> Q. Might the details they give one person differ from the details that they give another person?
>
> A. Yes. The audience plays a huge role in that.

As set out above, Chase did not say that child victims made things up. Rather, she indicated that the particular details offered by a child might differ depending on the listener, but not that the essential facts would change. Accordingly, the trial court did not abuse its discretion by sustaining the prosecutor's objection because [Petitioner]'s argument was not supported by the evidence. . . .

After the trial court sustained the above objection, [Petitioner] then continued

with his argument about how Donna's telling different things to different people and her failure to remember the oral contact raised reasonable doubt as to both aggravated sexual-assault counts. [Petitioner] also argued that Donna had gotten into trouble the day before her outcry for having boys over and for having a hickey on her neck and that she had been punished with a spanking hard enough to leave welts.

[Petitioner] then argued that the testimony in the case was "all over the place," and stated, "The detective -- and why everyone tried to downplay it in a preinterview to the forensic interview. *She said she had been touched by a man other than [Petitioner]*." The prosecutor objected based on mischaracterization of testimony, adding, "The witnesses clearly said that that's not what happened." The trial court sustained the objection and granted the prosecutor's request for an instruction to disregard.

[Petitioner] directs us to the following portion of Donna's testimony during her cross-examination to support his argument:

> Q. Do you remember telling someone in preparation for a forensic interview that you had been touched by another man?
>
> A. Yes.
>
> Q. To the best of your ability, is that true?
>
> A. Yes.
>
> Q. Did you ever put a name with that other man?
>
> A. Yes.
>
> Q. And we're not talking about [Petitioner]. We're talking about someone else?
>
> A. Oh, no.
>
> Q. Did anyone ever follow-up about that other man?
>
> A. Are you talking about --
>
> Q. When you said you had been touched by another man, as far as you know, did the police or anybody else follow-up on another man?

> A. I don't understand the question.
>
> Q. As far as you know, was there an investigation about another man touching you?
>
> A. Yes.

He also refers us to Donna's subsequent redirect examination:

> Q. Okay. [Donna], couple of things that I think may have been confused by some of his questions. Okay. So let's try and answer a few of those. He kept -- the Defense counsel kept talking about touched by another man.
>
> Were you touched by anyone other than this defendant, [Petitioner]?
>
> A. No, just him.
>
> Q. Okay. So he is the only man who has ever touched your vagina inappropriately?
>
> A. Yes.

And [Petitioner] refers us to the testimony by Arlington Police Detective Dara DeWall during her cross-examination:

> Q. When [Donna] went for a forensic interview, is there a preinterview procedure that is gone through?
>
> A. What do you mean by that?
>
> Q. Is there some sort of preinterview procedure when one goes for a forensic interview?
>
> A. No.
>
> Q. In your report, do you remember referring to, when [Donna] was being screened for her sexual abuse from somebody else, she did indicate that she was touched by someone other than the suspect in this case, another man?
>
> A. She was -- in her forensic interview, I did write that in my

>    -- I believe that I meant to say "did not," but I did put that she had, yes.
>
>    Q. Okay. But it says another man?
>
>    A. Yes.
>
>    Q. In your report?
>
>    A. It does.
>
>    Q. And that was part of the preinterview according to your report she was --
>
>    A. No, that's in the forensic interview.

After the trial court sustained the prosecutor's objection and gave an instruction to disregard, [Petitioner] then continued his argument, stating that the detective "admitted, yeah, that's what I wrote in my report, but I meant she did not," and argued that this put "reasonable doubt all over this case."

The improper denial of a jury argument may constitute a denial of the right to counsel, a constitutional error. When reviewing constitutional harm, we take into account any and every circumstance apparent in the record "that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" In doing so, we may consider the nature of the error, the extent that the State emphasized it, its probable collateral implications, and how a juror would probably weigh the error. This harmless-error test requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution. It does not focus on the propriety of the trial's outcome but rather the error's probable impact on the jury. In evaluating whether a defendant was harmed by the trial court's exclusion of the defendant's argument, an appellate court may consider the extent to which the defendant communicated his argument despite the trial court's ruling.

[Petitioner]'s presentation of his theory that Donna was a liar was illustrated through skillful cross-examination. As set out above, he raised the possibility during Donna's cross-examination that someone else had touched her and the inconsistencies in what she had told others. While Donna testified on direct that she told her friend Amy that she had been touched in her private area, during [Petitioner]'s cross-examination of Amy, Amy said that Donna told her that [Petitioner] had taken her shirt off and touched her chest and that [Petitioner] made her put her hand on his penis. During his cross-examination of the SANE nurse,

[Petitioner] brought out that Donna did not tell her that [Petitioner] had licked her vagina or had her touch his penis and that Donna did not tell her that [Petitioner] touched her breast. And during his cross-examination of the forensic interviewer, [Petitioner] brought out the same testimony—Donna denied that anyone had exposed his genitals to her or had her touch them.

During Donna's mother's direct testimony, she testified that Donna told her that [Petitioner] had put his mouth on her and put his finger in her vagina, in contrast to Donna's earlier testimony that she no longer wanted to say that [Petitioner] had used his mouth to touch her private area. He brought out on cross-examination that Donna made her outcry to her mother the day after Donna got in trouble for having boys over and for having a hickey.

Before [Petitioner]'s closing argument, the prosecutor argued the elements of the offenses and asked the jury to remember the details that Donna had given them through her mother, who was the outcry witness, through the forensic interviewer, through the SANE nurse, and through her friend and her cousin.

During [Petitioner]'s closing argument, one of his defense attorneys argued,

> . . . when you go back in that jury deliberation room, see if you-all can agree what she said to what different people. It's all over the place. Sometimes it's, [Petitioner] had his clothes off, and [he] made [her] touch his penis. Sometimes it's, he touched my breast. Sometimes it's, licked the vagina. And sometimes it's, touched the vagina. Those are four different stories. They change depending on the witness. . . . It's very difficult, even when taking notes, to keep straight of how many different stories were told to how many different witnesses from 2016 until now.
>
> You wouldn't expect that. Go back and talk among yourselves. Ask yourselves, would you expect all that change from then to now? Of course you would have expected it from 2009 or ten to 2016 when it first came up. That would be the one. It is certainly not normal to have all these changes from 2016 till now. That's reasonable doubt.
>
> . . . . They have to answer why there's so many different stories from 2016 till now.
>
> . . . .
>
> Now, how this all came out is another suspicious thing. This

came out when she [was] whipped severely to having welts. It came out the next day. The very next day when she was beat so bad, she had welts. That affects this case. That creates reasonable doubt.

[Petitioner]'s other attorney argued,

> . . . [Donna] takes the stand, I don't remember that happened. I can't tell you. Well, if you're 13 years old, and here you are a year or two later and you've repeated the story to innumerable people, how do you take the stand and say I don't remember? You don't. Unless there's something very funny going on. And I don't know what funny could be going on. We don't know. That's not a detail someone is going to mistake about.
>
> And that puts into question the other major allegation.
>
> . . . .
>
> You don't send a man to the penitentiary, you don't find him guilty of something this serious when the victim can't remember what she said from the time she was 13 till the time she was 15 and came to court to testify. That's not proof beyond a reasonable doubt.

The prosecutor in rebuttal then began by stating, "Now that we're done putting [Donna] on trial, let's talk about the evidence that you actually got in this case." She argued, "If you believe [Donna] when she said it didn't happen, you have to believe her when she said it did."

Assuming, without deciding, that the trial court abused its discretion by sustaining the prosecutor's second objection, we cannot say, on this record, that [Petitioner] was harmed because the record reflects that [Petitioner]'s ability to thoroughly attack Donna's credibility throughout the trial and in his closing argument was not affected. With regard to the specific argument that [Petitioner] complains he was prevented from making, the jury could have concluded that even if Donna had been touched by another man, such as the boy who had given her a hickey, this did not mean that [Petitioner] did not touch her as well. That is, the probable impact of being prevented from pursuing this particular argument, in light of the evidence and remaining jury arguments, was minimal.

SHR 66–75, ECF No. 18-10 (emphasis in original) (footnote omitted) (citations omitted).

In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). A petitioner is thus entitled to federal habeas relief due to trial error only if such error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637–38 (1993).

> [U]nder *Brecht,* a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson,* 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson,* 75 F.3d 1017, 1026–27 (5th Cir. 1996)). In other words, to be entitled to federal habeas relief due to a trial error, a petitioner must show the error actually prejudiced him. *Brecht,* 507 U.S. at 637.

Petitioner fails to demonstrate that the state court's determination of the claims is contrary to, or an unreasonable application, of federal law as determined by the Supreme Court or based on an unreasonable determination of facts in light of the evidence. A trial court does exercise broad discretion in limiting the scope of closing argument. *Herring v. New York,* 422 U.S. 853, 862 (1975). As explained by the appellate court, the trial court acted within its discretion in excluding the first argument because it was not supported by the evidence. And, assuming an abuse of discretion in excluding the second argument, as explained by the appellate court, the affect, if any, was minimal. Petitioner was afforded ample opportunity to develop his defensive theory through cross-examination of the witnesses and his remaining closing argument.

## VI. CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 1st day of July, 2021.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**